### FOLGER v. PUTNAM et al.

### In re FOLGER.

#### (Circuit Court of Appeals, Ninth Circuit. March 18, 1912.)

#### No. 1,998.

1. BANKRUPTCY (§§ 58, 59*)—PREFERENCE—WHAT CONSTITUTES—ACT OF BANKRUPTCY.

Bankruptcy Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445), relates to preferred creditors, and provides that a person shall be deemed to have given a preference if, being insolvent, he has within four months before the filing of the petition, or after the filing and before adjudication, suffered a judgment to be entered against him in favor of any person, or made a transfer of his property, and the effect of the enforcement of any such judgment or transfer would be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors in the same class. *Held*, that such definition of a "preference" confines its sufferance or acquirement to two classes of transactions, viz., a judgment obtained within four months before the filing of the petition in bankruptcy and before adjudication, and a transfer made by the bankrupt within the same period of time, contradistinguishing the preference by a transfer from that of procuring or suffering a judgment to be entered, etc.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 81, 82; Dec. Dig. §§ 58, 59.*]

2. BANKRUPTCY (§ 198*)—LIENS—DISSOLUTION—STATUTES.

Bankruptcy Act July 1, 1898, c. 541, § 67c, 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), declares that all liens obtained by suit at law or in equity, including attachment on mesne process or a judgment by confession begun within four months before the filing of the petition in bankruptcy, shall be dissolved by the adjudication, if it appear that the lien was obtained or permitted while the debtor was insolvent, or that its existence or enforcement will work a preference. *Held*, that such clause recognizes a preference obtained through an attachment acquired on mesne process pursuant to a suit or proceeding at law or in equity, providing the attachment shall have been obtained while the debtor was insolvent, and its existence and enforcement will operate as a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–316; Dec. Dig. § 198.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. BANKRUPTCY (§ 198*)—STATUTES—CONSTRUCTION.**

Bankruptcy Act July 1, 1898, c. 541, § 67c. 30 Stat. 564 (U. S. Comp. St. 1901, p. 3449), saves to a creditor a lien obtained through legal proceedings begun within four months unless obtained while the debtor was insolvent, or the creditor had reasonable cause to believe such insolvency, or the lien was sought and permitted in fraud of the provisions of the act, while subdivision "f" avoids all liens obtained through legal proceedings within the four months' period against a person who is insolvent, irrespective of the creditor's knowledge of insolvency, and of the question whether the obtaining of the lien was in any way suffered or permitted by the debtor. *Held* that while subdivisions "c" and "f" are antagonistic and irreconcilable, and subdivision "f" was controlling, the two subdivisions must be read together in construing the act, and hence a preference may not only consist in the bankrupt's procuring or suffering a judgment to be entered against him or making a transfer of his property within four months of the filing of the bankruptcy proceedings, but also by the creation of a lien by attachment within the four months' period, the existence or enforcement of which will work a preference.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 289, 296–316; Dec. Dig. § 198.*]

**4. BANKRUPTCY (§ 59*)—ACT OF BANKRUPTCY—ATTACHMENT.**

Bankruptcy Act July 1, 1898, c. 541, § 3a, subd. 3, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), provides that an act of bankruptcy shall consist in the bankrupt having suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged the same. *Held,* that since under section 1, subd. 25, the word "transfer" includes every mode of disposing of or parting with property, or the possession thereof, either absolutely or conditionally as a payment, pledge, mortgage, gift, or security, where a bankrupt, while insolvent, failed to discharge an attachment five days before the expiration of the four months' period, after which it would have become an irrevocable incumbrance on the property attached and operate as a preference to the attaching creditor, the bankrupt thereby committed an act of bankruptcy and was subject to adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 81, 82; Dec. Dig. § 59.*]

Petition for Revision of Proceedings of the District Court of the United States for the Northern District of California, in Bankruptcy.

In the matter of bankruptcy proceedings of J. A. Folger. Petition for revision of a judgment overruling a demurrer of Kate C. Putnam, as administratrix of the estate of Fred C. Putnam, deceased, and others, praying that petitioner be adjudged a bankrupt. Affirmed.

This is a petition to this court for a revision of the judgment of the District Court overruling a demurrer to a petition in bankruptcy praying that the petitioner herein, J. A. Folger, be adjudged a bankrupt. The petition for the adjudication was filed November 2, 1910, and sets forth, among other things:

"That within four months next preceding the filing of this petition said J. A. Folger committed an act of bankruptcy, in that he suffered and permitted, while insolvent, a creditor, one Charles C. Moore, to obtain a preference through legal proceedings, and did not, within five days before the final disposition of the property affected by said preference, or at all, vacate or discharge the same.

"That on the 2d day of July, 1910, one Charles C. Moore commenced an action in the superior court of the state of California, in and for the city and county of San Francisco, against said J. A. Folger, to recover the sum

of $21,443.75, together with accrued interest thereon, which action ever since has been and is now pending in said court, and has never been dismissed or determined adversely to the plaintiff herein. That said action was brought by said Charles C. Moore for the purpose of obtaining from J. A. Folger contribution of the amount due as a joint indorser of a promissory note, made, executed, and delivered by the Ocean Shore Railway Company, to the Mercantile Trust Company of San Francisco for the sum of $120,000 payable at the said city and county of San Francisco, on June 27, 1910, and indorsed by said Charles C. Moore and J. A. Folger. That said Ocean Shore Railway Company failed and neglected to pay said note, and that said Charles C. Moore was required to and did pay the sum of $84,975 on account thereof. That said action is brought to enforce a just and valid indebtedness due from said J. A. Folger, and that he has no good legal or equitable defense thereto.

"That on said 2d day of July, 1910, said Charles C. Moore caused the clerk of said court in which said action was brought to issue a writ of attachment in said action, and said clerk duly issued the same in the sum of $21,443.75, which writ was thereupon duly delivered to the sheriff of said city and county of San Francisco, who thereupon duly levied the same upon property there and then belonging to said J. A. Folger, and consisting of all stock owned by him in the Ocean Shore Railway Company. That thereafter alias writs of attachment were duly issued in said action and duly levied by said sheriff on property there and then belonging to said J. A. Folger and consisting of shares of stock in the Folger Estate Company, a corporation, and shares of stock in the J. A. Folger & Co., a corporation, and on money, credits, goods, effects, debts, and property due from said J. A. Folger & Co. a corporation, to said J. A. Folger. That said property was of the value of upwards of $50,000.

"That the attachments so levied have never been released, determined, or vacated, or discharged, but that they ever since have and do now constitute subsisting liens upon the property of said J. A. Folger, and that on November 3, 1910, said liens will become a preference not to be released or avoided by bankruptcy proceedings, and that said attached property will become and be finally disposed of and sequestrated by said Charles C. Moore, and that your petitioners and the general creditors of said J. A. Folger will be deprived of said property and of the value thereof."

W. W. Kaufman (Walter D. Mansfield, of counsel), for petitioner.
L. S. Melsted and Edwin H. Williams, for respondents.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). Several grounds of demurrer are assigned, but the sole question presented for our determination is whether the petition for adjudication charges an act of bankruptcy as having been committed by Folger under section 3a, subdivision 3, of the Bankruptcy Act.

It will be noted from the petition for adjudication that the attachment was issued and levied upon Folger's property July 2, 1910, and that on November 3d four months would have run from the date of the levy.

Now it is contended that, if four months from the time of the levy were permitted to elapse without a vacation or discharge of such attachment, the lien thereof would become irrevocable in bankruptcy, and thus the attaching creditor would have obtained a preference over other creditors, a thing that the act was intended to obviate. Hence that the averments of the petition show that Folger had committed

the third act of bankruptcy because he had failed to vacate or discharge the attachment within five days before final disposition of the property. The contention includes another, namely, that a failure to so release the attachment, the four months being permitted to elapse, would amount to a final disposition of the property, because it is said the attachment would thus become irrevocable under the Bankruptcy Act.

The contention thus made and a solution of the problem presented requires a construction of subdivision 3, section 3a, and to do which it must be read in connection with four other clauses of the Bankruptcy Act. These are subdivision 25, section 1a, and sections 60a, and 67c and f. Subdivision 25 gives meaning to the word "transfer," which signifies "the sale and every other and different mode of disposing of or parting with property or the possession of property absolutely or conditionally as a payment, pledge, mortgage, gift or security."

[1] Section 60a relates to preferred creditors and defines when a person shall be deemed to have given a preference. It is when being insolvent he has within four months before the filing of the petition in bankruptcy, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of any such judgment or transfer would be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors in the same class. This definition of a "preference" confines its sufferance or acquirement to two classes of transactions, namely, a judgment obtained within four months before the time of the filing of the petition in bankruptcy and before adjudication, and a transfer made by the bankrupt within the same period of time. It will be noted, also, that by the classification it contradistinguishes the preference by transfer from that by procuring or suffering a judgment to be entered. There is here a complete absence of all mention of an attachment in any form or stage as constituting a preference.

[2] Section 67c declares that all liens obtained by suit in law or in equity, including an attachment upon mesne process or a judgment by confession begun within four months before the filing of the petition in bankruptcy, shall be dissolved by the adjudication if it appear that said lien was obtained or permitted while the debtor was insolvent, and that its existence and enforcement will work a preference. This clause, it would seem, recognizes a preference obtainable through an attachment, acquired upon mesne process pursuant to a suit or proceeding at law or in equity, the condition being that the attachment shall have been made while the debtor was insolvent, and its existence and enforcement will so operate; that is, as a preference.

[3] Section 67f provides that all levies, judgments, attachments, or other liens obtained through legal proceedings against a person who is insolvent at any time within four months prior to the filing of the petition in bankruptcy, shall be null and void in case he is adjudged a bankrupt, and that the property affected thereby shall be wholly

discharged and released from the same. It has been held and determined that subdivision "c" is repugnant to the provisions of subdivision "f," on the same subject, and that the latter provisions are controlling. In re Richards, 96 Fed. 933, 935, 37 C. C. A. 634; Bear v. Chase, 99 Fed. 920, 40 C. C. A. 182. We quote from the opinion in the former case:

"These two subdivisions, 'c' and 'f,' in our judgment, are plainly antagonistic and irreconcilable. The former saves a lien obtained through legal proceedings begun within four months unless it was obtained and permitted while the debtor was insolvent, or the creditor had reasonable cause to believe such insolvency, or the lien was sought and permitted in fraud of the provisions of the act. The question of the pecuniary condition of the debtor and knowledge upon the part of the creditor are influential in determining the validity of the lien so obtained. But subdivision 'f' is broader in its scope, and avoids all liens obtained through legal proceedings within the time stated against a person who is insolvent, within the meaning of the subdivision, irrespective of knowledge on the part of the creditor of the fact of insolvency, and irrespective of the question whether the obtaining of the lien was in any way suffered and permitted by the debtor. It avoids all liens obtained through legal proceedings against a person who is insolvent within four months before the filing of the petition."

See, also, Cook v. Robinson et al., 194 Fed. 785, 114 C. C. A. ——, No. 2,013, just decided.

Notwithstanding the repugnancy of subdivision "c" to subdivision "f," and that the provisions of the latter are controlling, those of the former still remain for the purpose of interpretation, as the intendment of the act must be gathered from a reading of all its provisions as enacted in pari materia. So reading the provisions as they relate to a preference, we find that a preference may not only consist in the bankrupt's procuring or suffering a judgment to be entered against him or making a transfer of his property within four months of the filing of the petition in bankruptcy, but also in the creation of a lien by way of attachment, or the confession of a judgment within four months of the filing of the petition, the existence and enforcement of which will work a preference.

[4] Now, the third act of bankruptcy, as will be noted from a reading of the statute, consists of two elements, namely: (1) Having suffered or permitted while insolvent any creditor to obtain a preference through legal proceedings; and (2) not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged the same, that is, the preference. The mere suffering or permitting while insolvent a creditor to obtain a preference alone does not constitute the act of bankruptcy, but the debtor must have failed at least five days before a sale of the property or final disposition thereof to have vacated or discharged such preference. It must be further observed that the preference here alluded to is one to be obtained through legal proceeding, not one by transfer. Preference by transfer constitutes the second act of bankruptcy.

It appears to be plain what is meant by the term "sale," but it is not so clear as it respects the words "final disposition." Judge Ray of the District Court for the Northern District of New York has

given to them a much broader signification than appertains to the word "sale." He says, in Re Tupper (D. C.) 163 Fed. 766, 770, that:

"Congress had in mind, when it enacted this law, the fact that there are different ways or modes of disposing of property, of enforcing executions, judgments, and liens, and it referred to the ordinary method of disposition by way of sale, and then used the words 'or final disposition' to cover every other method of passing the control and dominion of the property from the debtor, insolvent person, to another or to others, either absolutely or as security to the preferred creditor to the exclusion of his other creditors."

In that case a judgment was obtained against the bankrupt November 8, 1907, and being docketed became a lien upon his real property. The judgment so remained until March 7, 1908, when a petition was filed to have the judgment debtor adjudged a bankrupt; it being alleged that the same constituted an illegal and unlawful preference in bankruptcy. There had been no execution or order of sale issued, nor was any sale advertised or made. The judgment was within a day, however, of becoming an irrevocable lien under the bankruptcy act, and if not vacated or discharged by the bankrupt would at the expiration of the day have bound the property of his estate indissolubly.

"Here, but for the bankruptcy proceedings," the learned judge further says, "the land or its proceeds will go to the judgment creditor if the judgment debtor does not pay it. But he is insolvent, as the petition alleges, and the demurrer concedes, and cannot discharge the lien without applying his other property, if any, to the payment of this preference, or borrowing the money. It was possible and easy for Tupper to vacate or discharge the preference obtained by the docketing of this judgment. All she had to do, being insolvent, was to file a voluntary petition in bankruptcy and the judgment would fall under sections 67c and 67f and 60b."

So that it was in effect determined that the failure of the bankrupt to vacate or discharge a judgment within five days of the time it would become a fixed lien upon his property, irrevocable under the Bankruptcy Act, was tantamount to a final disposition under the judgment and constituted an act of bankruptcy under subdivision 3, § 3a.

An expression of the Supreme Court contained in the opinion rendered in Wilson v. Nelson, 183 U. S. 191, 198, 22 Sup. Ct. 74, 77 (46 L. Ed. 147), would seem to indicate that the court thought it incumbent upon the bankrupt to make a voluntary assignment in bankruptcy, if he is unable to discharge the lien of the judgment in any other way. The court says:

"And the debtor did not, within five days before the sale of the property on execution, vacate or discharge such preference, or file a petition in bankruptcy. By failing to do so, he confessed that he was hopelessly insolvent and consented to the preference that he failed to vacate."

On the other hand, it has been held by Judge Dodge, in a succinct and able opinion in Re Crafts-Riordon Shoe Co. (D. C.) 185 Fed. 931, that an attachment and sale of the attached property within four months of the levy, the sale being made on the ground that the property could not be kept without great and disproportionate expense, and the lien not having been discharged by the debtor, did not constitute an act of bankruptcy under subdivision 3, section 3a. In this

case the action was instituted and the attachment had on May 28, 1909, and the petition in bankruptcy was filed July 3, 1909. The property was sold June 29, 1909; but, as said by the court, the sale was not one affecting the "final disposition of the property," the purpose being only to preserve the property to abide the judgment, if one was had, and to be applied on the execution to issue in due course. The case did not, therefore, present the exigency of an attachment about to become irrevocable under the bankruptcy act within the period of five days.

Further, it has been held by the Circuit Court of Appeals, First Circuit (Parmenter Manufacturing Co. v. Stoever et al., 97 Fed. 330, 38 C. C. A. 200), that under subdivision 3, § 3a, the act of bankruptcy consists in the failure to vacate the execution five days before the sale or other disposition of the property seized on execution, and the four months' period runs from that date. Says the court:

"This was clearly the true act of bankruptcy within the contemplation of the statute."

In this case an attachment was had July 5, 1898, judgment was entered by default September 21, 1898, an execution issued and the attached property seized under it on October 15th, and the property was sold October 27, 1898. The petition in bankruptcy was filed February 1, 1899, more than four months after the attachment was levied, but within four months of the time the property was seized under the execution. The court further observed at the close of the opinion that:

"In order to prevent any misapprehension, we will add that the question whether or not the attaching creditor acquired a valid lien as against these proceedings in bankruptcy is not in issue on this appeal."

To advance a step further, Lowell, District Judge, announced the doctrine in the case of In re Blair (D. C.) 108 Fed. 529, that:

"An attachment on mesne process under the statutes of Massachusetts which creates a lien, under the decisions of the courts, enforceable, however, only by obtaining judgment and issuing execution thereon within a limited time, is not discharged, under Bankruptcy Act 1898, § 67f, by the filing of a petition in bankruptcy against the defendant more than four months after such attachment was levied, although the judgment was not obtained until within the four months; nor are the judgment and execution issued thereon rendered void by such section, since they do not affect with a lien the property attached, but only enforce the lien already existing, and which, having attached more than four months before the filing of the petition, is, by necessary implication, preserved by the act."

The quotation is from the headnote.

This case has the approval of the Supreme Court in Metcalf v. Barker, 187 U. S. 165, at page 174, 23 Sup. Ct. 67, at page 71 (47 L. Ed. 122). That court says:

"In our opinion the conclusion to be drawn from this language (of section 67f) is that it is the lien created by a levy, or a judgment, or an attachment, or otherwise, that is invalidated, and that where the lien is obtained more than four months prior to the filing of the petition, it is not only not to be deemed to be null and void on adjudication, but its validity is recognized. When it is obtained within four months, the property is discharged therefrom, but not otherwise. A judgment or decree in enforcement of an other-

wise valid pre-existing lien is not the judgment denounced by the statute, which is plainly confined to judgments creating liens. If this were not so, the date of the acquisition of a lien by attachment or creditor's bill would be entirely immaterial."

Thus it will be seen that the interpretation given the act by Judge Lowell and the Supreme Court renders it possible for an attachment lien creditor to obtain an irrevocable preference under the act, unless it be that the debtor is required to vacate or discharge such a preference as well as one obtained through judgment and execution or order of sale at least five days before sale or final disposition of the property, final disposition signifying the operation of the law, which renders the lien irrevocable and unalterably incumbers the property with it. Such cannot be the intendment of an act which has for its special purpose the securing to creditors of a bankrupt, an insolvent person, a just and equal distribution of his estate among them according to their respective claims. If so the act would defeat itself; otherwise the purposes of the act are adequately subserved.

We hold, therefore, that it is incumbent upon an insolvent person to discharge or vacate a lien secured by an attachment upon his property at least five days before a period of four months expires following the date of the levy of such attachment, and if he fails therein he commits the third act of bankruptcy. It may be and has been suggested that this will sometimes force a person into bankruptcy, when the attachment is acquired upon an invalid or spurious claim, or one not provable against the bankrupt's estate; but it seems to us better that this contingency should obtain than that the very statute itself should be defeated in its fundamental purpose. Of course, unless the person against whom the attachment is secured is insolvent, the conclusion reached cannot apply.

The view of the court in Parmenter Manufacturing Co. v. Stoever, supra, would seem to be opposed to this conclusion; but the exact question here determined was not a subject of controversy there.

These considerations lead to an affirmance of the judgment of the District Court, and it is so ordered, with costs to the respondents.