## In re TRUITT.

### (District Court, D. Maryland. March 14, 1913.)

1. BANKRUPTCY (§ 58*) — ACTS OF BANKRUPTCY — OBTAINING SECURITY — "TRANSFER."

Bankruptcy Act July 1, 1898, c. 541, § 3 (2), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), provides that, where a person while insolvent transfers any portion of his property to one or more of his creditors with intent to prefer such creditors over others, he commits an act of bankruptcy, and section 1 defines "transfer" as including the sale and every other and different mode of disposing of, or parting with, property or possession thereof as a payment, pledge, mortgage, gift, or security. *Held* that, where a creditor obtains a judgment which becomes a lien on his debtor's property, he thereby obtains security, so that if the debtor aids a creditor to obtain a judgment which has the effect of transferring property to the creditor by way of security, with intent to prefer the creditor while the debtor is insolvent, the second act of bankruptcy has been committed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 83; Dec. Dig. § 58.*]

For other definitions, see Words and Phrases, vol. 8, pp. 7064–7070.]

2. BANKRUPTCY (§ 58*)—ACTS OF BANKRUPTCY—CONFESSION OF JUDGMENT.

For a debtor while insolvent to confess a judgment with intent to prefer a creditor is to aid the creditor to obtain a preference and constitutes an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 83; Dec. Dig. § 58.*]

3. BANKRUPTCY (§§ 58, 59*)—ACTS OF BANKRUPTCY—PROOF.

Bankruptcy Act July 1, 1898, c. 541, § 3 (2), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), provides that an insolvent shall have committed an act of bankruptcy if he has transferred while insolvent any portion of his property to one or more of his creditors with intent to prefer such creditor, or (3) suffered or permitted while insolvent any creditor to obtain a preference through legal proceedings, and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged the same. *Held* that, where a creditor relies on the commission of the second act in order to establish bankruptcy, he must show affirmative action on the debtor's part and must prove that it was taken with intent to prefer the creditor, and this though the act constitutes a part of a chain of events which culminated in the commission of the third act also, but neither can be committed unless the debtor is insolvent, nor unless a preference has actually resulted from it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 81–83; Dec. Dig. §§ 58, 59.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** BANKRUPTCY (§§ 58, 59*)—ACTS OF BANKRUPTCY—ACTS OF CREDITOR.

In determining whether the second act of bankruptcy has been committed (Bankruptcy Act July 1, 1898, c. 541, § 3 (2), 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]), it is not important to inquire what the creditor did or intended, it being the debtor's act and purpose that is material; but the third act may be proved without showing that the debtor ever did or tried to do anything, or even that he had ever given the matter a thought.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 57, 72–79, 81–83; Dec. Dig. §§ 58, 59.*]

**5.** BANKRUPTCY (§ 81*)—ACTS OF BANKRUPTCY—PETITION.

A bankruptcy petition, alleging that the debtor was the owner of certain described real estate in W. county, and that within four months before the filing of the petition he had while insolvent, and with intent to prefer certain named creditors, transferred to them by way of security his interest in such real property by permitting confessed judgments in their favor and against him to be docketed in the circuit court of that county, sufficiently charged the commission of the second act of bankruptcy; Bankruptcy Act July 1, 1898, c. 541, § 3 (2), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), providing that, if a person while insolvent transfers any portion of his property to one or more of his creditors with intent to prefer such creditors over others, he shall have committed an act of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 59, 113–118, 125; Dec. Dig. § 81.*]

**6.** BANKRUPTCY (§ 81*)—ACTS OF BANKRUPTCY—JUDGMENT LIEN—FAILURE TO RELEASE.

An allegation that a debtor, while insolvent, and on a particular date, which was two or three days less than four months before the filing of a petition in bankruptcy, permitted certain named creditors to obtain judgments against him, and thereafter did nothing to satisfy or discharge the judgments or the liens created by them, and that within less than five days before the filing of the petition the lien created by them would become absolute and unavoidable by the trustee in bankruptcy and the property become finally disposed of and sequestered by the judgment creditors, was insufficient to show commission of the third act of bankruptcy; Bankruptcy Act July 1, 1898, c. 541, § 3 (3), 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), providing that it shall consist of the debtor having suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and in having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged the same.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 59, 113–118, 125; Dec. Dig. § 81.*]

In Bankruptcy. In the matter of Elisha Wilmer Truitt, alleged bankrupt. On demurrer to involuntary petition. Sustained in part, and overruled in part.

Jay Williams, of Salisbury, Md., for petitioning creditors.

Ellegood, Freeny & Wailes and F. Leonard Wailes, all of Salisbury, Md., for alleged bankrupt.

ROSE, District Judge. Certain creditors of one Truitt are seeking to have him adjudicated a bankrupt. He has demurred to their petition. He says it does not charge that he has committed any act of bankruptcy. They contend that it avers facts which show the commission of both the second and the third acts. The petition alleges

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the debtor is the owner of certain described real estate in Wicomico county, Md.; that within four months before its filing he had, while insolvent and with intent to prefer certain named creditors, transferred to them by way of security his interest in such real property by permitting confessed judgments in their favor and against him to be docketed, entered, and recorded in the circuit court for that county.

[1] The second act of bankruptcy is committed whenever an insolvent transfers "any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors." Section 1 of the act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) defines "transfer" as including "the sale and every other and different mode of disposing of or parting with property or the possession of property absolutely or conditionally as a payment, pledge, mortgage, gift or security."

A creditor who obtains a judgment which becomes a lien upon the debtor's property thereby obtains security. Clark v. Iselin, 21 Wall. 372, 373, 22 L. Ed. 568.

[2] A debtor, who aids his creditor to obtain a judgment which has such effect, transfers property to him by way of security within the meaning of the act. If such aid is given with intent to prefer the creditor and while the debtor is insolvent, the second act of bankruptcy has been committed. To confess a judgment with such intent is to aid the creditor to obtain a preference. Even under the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), the Supreme Court said that:

"Undoubtedly very slight evidence of an affirmative character of the existence of a desire to prefer one creditor, or of acts done with a view to secure such preference, might be sufficient to invalidate the whole transaction." Wilson v. City Bank, 17 Wall. 487, 21 L. Ed. 723.

The thirty-ninth section of the Bankruptcy Act of 1867 specified some nine acts of bankruptcy. The eighth of these declared that an act of bankruptcy is committed when one, "who, being bankrupt, or insolvent, or in contemplation of bankruptcy or insolvency, shall make any payment, gift, grant, sale, conveyance or transfer of money or other property, estate, rights or credits, or give any warrant to confess judgment or procure or suffer his property to be taken on legal process with intent to give a preference to one or more of his creditors."

A debtor did not, within the meaning of the words quoted, procure or suffer a judgment unless he in some way actively aided in obtaining it. Wilson v. City Bank, supra.

The word "transfer" is given by the present law a much broader meaning than it had under its predecessor. It follows that the second act of bankruptcy under the act of 1898 is substantially the same as was the eighth under that of 1867.

There may be some cases which will fall under the former and not under the latter, or vice versa. Speaking generally, however, under the law of 1867 the eighth act of bankruptcy was committed whenever an insolvent debtor with intent to prefer one of his creditors did anything which gave that creditor a preference or which aided such creditor in obtaining a preference. Under the law of 1898, under like cir-

cumstances, the second act of bankruptcy is committed. In so holding, the second act is not confused with the third.

The words "procure or suffer his property to be taken on legal process," used by the act of 1867 in defining the eighth act of bankruptcy, have a suggestive resemblance to "suffer or permitted while insolvent any creditor to obtain a preference through legal proceedings," which in the act of 1898 formed part of the description of the third act. Nevertheless, the acts themselves are radically different.

Under the law of 1867 the act of bankruptcy was not committed unless the debtor actively and knowingly had a part in it. Under the act of 1898 it is not essential that he shall do anything at all. Wilson Bros. v. Nelson, 183 U. S. 191, 22 Sup. Ct. 74, 46 L. Ed. 147.

In its nature the third act of bankruptcy under the present law is more closely related to the sixth and seventh of its predecessor. Those acts were committed when a debtor had been arrested or held in custody or had been actually imprisoned in civil actions.

[3] As the law now is, a creditor who relies on the commission of the second act must show affirmative action on the debtor's part and must prove that it was taken with intent to prefer the creditor. If such showing is made and the effect of what the debtor did was to give a preference, the commission of the second act of bankruptcy has been established. It may be that what is proved constituted a part of a chain of events which culminated in the commission of the third act also. They have features in common. Neither of them can be committed unless the debtor is insolvent nor unless a preference has actually resulted from it. In other respects they are radically different.

[4] In determining whether the second act has been committed, it is not important to inquire what the creditor did or intended. It is the debtor's act and purpose which is material. On the other hand, the third act may be proved without showing that the debtor ever did or tried to do anything, or even that he had ever given the matter a thought.

[5] It follows that the petitioning creditors have sufficiently charged the commission of the second act of bankruptcy. In so holding I assume that the reference made in paragraph "b" of article 4 of their petition to paragraph "c" sufficiently incorporates in the former the allegation that the judgments in question were confessed. In the interest of clearness, however, it will be desirable for the petitioning creditors to amend paragraph "b" by incorporating such allegation expressly in it instead of making it by reference only.

[6] A much more difficult question is raised by the demurrer to paragraphs "a," "c," and "d" of the fourth article of the petition. They charge in somewhat varying phraseology that the debtor owned real estate in Wicomico county, Md., and that while insolvent and on a date particularly specified, which was two or three days less than four months before the filing of the petition in bankruptcy, he permitted named creditors to obtain judgments against him in the circuit court for that county; that he has done nothing to satisfy or discharge such judgments or the liens created by them; and that within less than five days after the filing of the petition the lien created by them will become absolute and unavoidable by the trustee in bank-

ruptcy and the property will thereby become finally disposed of and sequestered by such judgment creditors. It is not necessary to set forth the wording of this portion of the petition any more precisely. It is carefully modeled on the language used in the creditors' petition in Folger v. Putnam, 194 Fed. 793, 114 C. C. A. 513.

Stated briefly, the contention of the petitioning creditors is that whenever a creditor of an insolvent debtor secures a preference by obtaining a lien through legal proceedings upon the property of his debtor, and the latter does not within five days before the expiration of four months thereafter pay, discharge, satisfy, or vacate such lien, an act of bankruptcy has been committed. This contention has been made before. It was held unsound in Seaboard Steel Casting Co. v. Trigg (D. C.) 124 Fed. 75; In re Vastbinder (D. C.) 126 Fed. 417; In re Vetterman (D. C.) 135 Fed. 443. It has been upheld in Re Tupper (D. C.) 163 Fed. 766, and in Folger v. Putnam, 194 Fed. 793, 114 C. C. A. 513. The last is a decision of the United States Circuit Court of Appeals for the Ninth Circuit. I understand that on March 1, 1913, the Supreme Court of the United States granted a writ of certiorari to bring up the record in it. The question at bar has thus been put in the way of final and authoritative decision. In regular course eighteen months or two years will doubtless elapse before the answer can be given. A decision in the case at bar cannot be so long postponed.

In Folger v. Putnam, the United States Circuit Court of Appeals analyzes the law and reviews the decided cases fully and ably. It is unnecessary here to go over any of the ground there traversed. If the law is not as it is there held to be, a creditor will often have the power to obtain preferential security upon the property of a passively friendly debtor and to hold such security no matter what the other creditors may do or try to do. All that will be necessary will be for the favored creditor to obtain a lien through legal proceedings and then so to arrange matters that such lien shall not be enforced by actual sale or other final disposition of the property until the expiration of four months and five days after it has been acquired. Where the debtor happens to have property upon which a judgment so soon as entered becomes a lien, all that the creditor will have to do in the first instance is to obtain a judgment. If, in order to secure a lien, an attachment or execution is necessary, that may issue. Even in that event a creditor will be able to hold his preferential rights if it is possible under the state law or practice to delay a sale for the period mentioned.

An act of bankruptcy has certainly been committed whenever a creditor causes his debtor's property, upon which he has secured a lien by judgment, execution, or attachment, to be sold within four months and four days after the date of such lien. In the nature of things it does not seem that he should be any better off if he postpones the sale two days longer. Such considerations argue strongly in favor of the conclusion reached by the United States Circuit Court of Appeals for the Ninth Circuit and by Judge Ray in Re Tupper, supra.

The question has another side. Congress defines the third act of

bankruptcy as consisting in the bankrupt having "suffered or permitted while insolvent any creditor to obtain a preference through legal proceedings and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference."

If the petitioning creditors are right, this language means the same thing as if Congress had used the words "suffered or permitted while insolvent any creditor to obtain a preference through legal proceedings and not having at least five days before (a) the expiration of four months after the obtaining of such preference, or (b) a sale or final disposition of any property affected by such preference vacated or discharged such preference."

Should such construction be put upon the language actually employed? The words "final disposition," it is true, may have the import which the petitioning creditors would give to them. The connection in which those words are used does not naturally suggest that they should receive such an interpretation. It is highly desirable that the creditors generally should be able to prevent one of their number from securing a preference by a lien obtained through legal proceedings of a character which would be vacated if bankruptcy ensued within four months after the lien was first fastened upon the debtor's property. Such would be the result of upholding the petitioner's contention. The courts might well give such construction to the language used if there was no reason to suppose that Congress had deliberately refrained from saying what they contend it in effect did say. But is there not such reason? The language used by Congress in defining the third act of bankruptcy is very different from that employed to describe the others.

By the general scheme of the law, creditors have four months after the commission of the act of bankruptcy within which to file a petition for an involuntary adjudication. Such act must therefore consist in some definite and precise thing which happens at a particular time. The fraudulent conveyance under the first act, the preferential transfer under the second act, the general assignment under the fourth, and so on, are definite acts. They are committed on a particular day. From that day the four months' period begins to run. There are difficulties in applying any such rule to the securing by the creditor of a preference through judgment. It was unnecessary, as has already been held, to deal specially with those instances in which the debtor, with intent to prefer a creditor, actively participated in securing him by confessing the judgment to him. When that took place the second act was committed.

Some provision, however, had to be made for those cases in which the creditor, without the assistance of the debtor and against his passive or active resistance, obtained a preference through legal proceedings. Congress would doubtless have been unwilling to declare that an insolvent debtor had committed an act of bankruptcy whenever such a lien was obtained against him. That he was insolvent might be due entirely to the judgment which constituted a lien. If he was liable on it, his debts exceeded his assets. If he was not, he might be

able to pay all that he owed and have a surplus besides. He might be entitled to take the case to an appellate court. Until the judgment or decree below had been affirmed it might be unjust to hold him bankrupt. Sound policy requires that something more than the mere rendition of a judgment or the levy of an attachment must take place before it can be said that an act of bankruptcy has been committed. There are difficulties in the way of drawing a definition both just and workable of an act of bankruptcy which will prevent a creditor from obtaining a lien upon the debtor's property through legal proceedings. A creditor should not be able to get a preference out of an insolvent debtor's estate. A debtor should not be adjudicated a bankrupt because he does not pay what he says he does not owe and which he may still be in a position to show he does not owe.

If both these ends are to be obtained, it will be necessary to make the act of bankruptcy take place when and not before the debtor's last opportunity of reversing the judgment or quashing it has passed away. If the debtor appealed or took a writ of error against the decree or judgment, the time at which the act of bankruptcy should as against him be held to have been committed would be when that decree or judgment had been affirmed above or his appeal or writ of error had been dismissed. If he had a right to take such appeal or to sue out such a writ of error, it would not be fair to hold that he had committed an act of bankruptcy until the time limited by law for taking his appeal had passed, unless he had in some way before that time precluded himself from appealing. Even then a third class of cases might occur. Appellate proceedings might have been instituted in due time, but the judgment below for all that might not have been superseded. The interests of the creditors would there require that the act of bankruptcy should be held to be committed when the judgment creditor actually enforced his judgment against the debtor's property. A statute which would define this act of bankruptcy would, if exact justice was to be done to all parties, have to provide that an adjudication of bankruptcy based on such consummated act should have the effect of dissolving the lien of the original judgment or attachment, although it had been obtained very many months, or perhaps years, before the adjudication was made. It may be that it is possible to draw an act which would satisfactorily provide for all these difficulties without involving the subject in any others. It does not appear that it has ever been done. In the English act of 1890, 53 and 54 Victoria, c. 71, the corresponding act of bankruptcy consists in the debtor's goods having been sold by the sheriff or having been held by him for 21 days. In that act it was found necessary to provide for the contingency of a controversy as to the ownership of the goods, a contingency which was met by declaring that the time consumed in interpleader proceedings should be excluded from the 21 days.

There was reason why Congress should not have seen its way clear to provide that the failure of a debtor to pay or otherwise extinguish or remove a lien obtained through legal proceedings within four months from date of the obtaining of such lien should be an act of bankruptcy. If that be so, the strongest argument for giving to .the

words "final disposition" the construction contended for by the petitioning creditors becomes inapplicable. To decide against those creditors is to lay down a rule of law under which the general purpose of the Bankrupt Act to prevent preferences may be easily defeated. In this particular case the bankrupt is really but little concerned. It was frankly admitted by counsel at the bar that it made no difference to him whether he was adjudicated or not. The contest is really between the petitioning and the judgment creditors. If the latter can defeat the adjudication on this petition, the lien of their judgments cannot otherwise be disturbed. They will be preferred over the other creditors of the debtor. It is quite probable that the instances in which any harm would practically result from the construction given to the act by the United States Circuit Court of Appeals for the Ninth Circuit would be rare. For all that Congress appears to have had such cases in mind and was not prepared to ignore them.

The courts may not change what Congress did on the theory that the general purpose of Congress will be more nearly carried out by construing the act to mean something which Congress was unwilling to say.

Under the act of 1867 the courts were asked to put a rather strained interpretation upon some of its language in order to carry out the supposed intent of Congress to secure equality of distribution in all cases of insolvency. The Supreme Court did not see its way clear to comply with this request. Wilson v. City Bank, supra. In that case the court declared that, before any one may be adjudicated an involuntary bankrupt, the precise circumstances or facts in which this is authorized to be done should not only be well defined in the law but clearly established in the court. This general rule of law Congress may well be supposed to have had in mind when it passed the present act. It had a right to assume that the courts would not by construction hold things to be acts of bankruptcy which it had not been willing clearly to declare to be such. It is true that in Wilson v. City Bank it was held that under the law of 1867 it was not an act of bankruptcy for a debtor passively to permit a creditor to obtain a judgment against him. It is equally true that the same high tribunal has held that, if a creditor causes his debtor's property to be levied upon in legal proceedings and advertised for sale, the debtor has under the present law committed an act of bankruptcy if he does not vacate or discharge the preference thus obtained at least five days before the date fixed for the sale. That decision, however, was placed expressly upon the ground that Congress had changed the language used in the earlier act. Nothing which was said in the case of Wilson Bros. v. Nelson in any way modifies the general rule of construction laid down in Wilson v. City Bank to the effect that, a proceeding in involuntary bankruptcy being against common right, all substantial doubts must be resolved in favor of the debtor.

It follows therefore that the demurrer must be sustained so far as concerns the allegations of acts of bankruptcy made by paragraphs "a," "c," and "d" of article 4 of the creditors' petition, and overruled so far as concerns the allegations of paragraph "b."