**In re HOFFMAN.**
No. 39892.

District Court, S. D. California,
Central Division.

March 12, 1943.

Hugo H. Harris, of Los Angeles, Cal., for Refinance Corporation, petitioner on review.

Martin Gendel, of Los Angeles, Cal., for George Gardner, trustee, in bankruptcy.

Laurence B. Martin and Russell B. Seymour, both of Los Angeles, Cal., for Walter E. Hoffman, bankrupt

J. F. T. O'CONNOR, District Judge.

This is a review of a referee's order denying petitioner's claim for reimbursement, pursuant to sec. 64, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. b, resulting from caretaker's and sheriff's fees.

An action was commenced by the Refinance Corporation in the Superior Court of the State of California against Walter E. Hoffman, the debtor herein, to recover for the misappropriation of certain accounts receivable which the Refinance Corporation, hereinafter referred to as the claimant, had purchased from the debtor at a discount.

On December 22, 1941, in consequence of this action, an attachment was issued and levied upon certain assets of the debtor whereby a sheriff's keeper was placed in custody thereof. On January 2, 1942 this proceeding was instituted by the bankrupt, (then the debtor) by filing a petition pursuant to Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq.

On January 5, 1942, two separate petitions were filed by certain creditors other than the claimant for the appointment of a receiver in this matter, but no receiver was appointed, and on January 6, 1942 an order was entered continuing the debtor in possession of his assets until the

further order of the court. The said order did not disturb possession of any of the said assets by the sheriff's keeper and he remained in possession, under the claimant's attachment, until he was withdrawn by the claimant on January 30, 1942, as will hereinafter appear.

On January 6, 1942 the debtor filed his petition for an order decreeing the attachment lien of the claimant to be null and void. Said petition was resisted by claimant. After several creditors' hearings, the matter was continued to January 30, 1942. On January 30, 1942 the debtor deposited his indemnity bond in the sum of $1,500.00 as ordered by the Referee under Section 326 of Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 726. The claimant caused its sheriff's keeper to be withdrawn without prejudice, to its right to assert that it had a valid attachment lien. The debtor was continued in possession of his assets, but a custodian was appointed with limited powers to take an inventory of the physical assets of the debtor and to impound the proceeds of any sales made by the debtor of any of the assets attached by the claimant.

On March 5, 1942 it appeared that the debtor abandoned his petition under Chapter XI, and thereupon the debtor was ordered declared bankrupt. A trustee was appointed to administer the estate in bankruptcy and the matter of the validity of the claimant's attachment lien was continued. In due course the trustee sold the physical assets of the bankrupt for much less than the amount anticipated, and the necessity for determining the attachment lien arose. Referee Utley of this court finally heard the issue and determined the attachment lien was void, and the claimant had no lien on any assets of the bankrupt or any proceeds therefrom. This ruling was made without prejudice to the right of the claimant to file a claim herein " 'for the payment of such moneys, subject to the court's approval, as it claims it has reasonably expended in the preservation of the assets for the trustee and the within estate.' " No review was taken and the order became final.

Thereafter, claimant filed its claim for $345.30 for moneys expended in preservation of the estate. The claim was resisted by the trustee. After hearing the evidence, Referee Brink found that subsequent to January 2, 1942, the claimant expended the sum of $235.35 in maintaining a sheriff's keeper in possession of assets of the bankrupt under a writ of attachment which was outstanding at the time this proceeding commenced on January 2, 1942, but that it had not been shown that the claimant preserved any assets of this estate by maintaining said keeper in possession thereof. Thereupon, an order was made denying the claim in its entirety.

The sole and primary issue is whether the expenditure of the claimant was actual and necessary to the preservation of the estate of the bankrupt and entitled to priority pursuant to section 64, sub. b of the Bankruptcy Act, 11 U.S.C.A. 104, sub. b.

■ " * * * it is the established rule that the referee's findings of fact have every reasonable presumption in their favor and should not be set aside unless it clearly appears that there was error or mistake on the part of the referee." In re Masor, 7 Cir., 117 F.2d 368, 370. The preceding rule was accepted by the court's announcement of it, although the case did not require its application.

■ "The referee who had the advantage of hearing the witnesses testify had a better opportunity to exercise a sound judgment and his findings should be accepted by the district judge unless it appears that he has plainly made a mistake. * * * Nevertheless the responsibility in the end is that of the judge who should accord due weight to the referee's findings but must find the facts as the evidence shows, them and apply the applicable law correctly." In re Lozito, 2 Cir., 113 F.2d 764, 765.

11 U.S.C.A. § 104 (b) provides: "The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate subsequent to filing the petition; * * *." "The actual and necessary cost of preserving the estate subsequent to the filing of the petition is, under subdivision (1) of paragraph (b) of this section, entitled to priority of payment. What items shall be allowed as such cost is purely a question for the determination of the court in the exercise of a sound judicial discretion." 11 U.S.C.A. 104, annot. 51.

■■ There is no doubt that the assets attached and over which the sheriff had obtained control were preserved (in the sense of maintaining the property intact),

until an indemnity bond was posted. That the costs claimed herein were actual is apparent from the evidence. However, the necessity of incurring such cost is disputable. What the term "necessary" purports to define is flexible. "This word, * * * like others, is used in various senses; and, in its construction, the subject, the context, the intention of the person using them, are all to be taken into view." It does not necessarily mean indispensable. McCulloch v. Maryland, 17 U.S. 316, 415, 416, 4 L.Ed. 579. 2 Bouv.Law Dict., Rawle's Third Revision, page 2310. The word "necessary" in the statute refers to what is reasonably advisable in order to preserve the estate of the bankrupt from further dissipation so that sufficient assets are available to liquidate the claims of general creditors prior to discharge.

Was the attachment lien in this category? The accounts receivable factored to the claimant were its principal security for obligations owed by the debtor. The attachment lien was merely a cumulative protective measure against future defalcations of the accounts pledged. A plan was suggested by the referee in the proceeding to place the debtor in charge of his assets for the purpose of resuming operation of his business and attempt to satisfy his creditors. This plan was objected to by claimant according to the record, not on account of the debtor's disqualification to so operate his business, but solely owing to the fact that claimant had been defrauded and might be in the future. The obvious intent of the petitioner was to secure its position, although general creditors would derive some incidental benefit. The claimant maintained this same attitude even after counsel for the debtor agreed to stipulate that the court instruct the debtor in possession to "retain the property or the proceeds intact", in the event he was allowed possession.

This court is cognizant of claimant's willingness to release its attachment provided a disinterested third party, agreeable to the creditors, assumed control. However, this was no justification for incurring the expense of a caretaker, when the operation of the business bore no relationship to the wrong perpetrated by the debtor, at least insofar as the necessity for preserving the estate is concerned.

On several occasions the claimant was admonished by the referee that he would have to "gamble" on the costs resulting from the attachment. Furthermore, the attachment lien was maintained even though the petitioner knew that it was subject to dissolution as working a preference. Folger v. Putnam, 9 Cir., 194 F. 793, 114 C.C.A. 513, certiorari dismissed 235 U.S. 712, 35 S.Ct. 202, 59 L.Ed. 436. In the circumstances, claimant assumed the risk of recovering assets for disbursements.

While the attached property subsequently reverted to the estate, that fact alone did not entitle the claimant to costs incurred solely on his own responsibility and for his own benefit. The views heretofore expressed compel this court to conclude that the costs were not necessary.

Costs will be awarded to the trustee. Findings of fact and conclusions of law will be prepared by the trustee in accordance with this opinion.