In re SIG. H. ROSENBLATT & CO.

In re PHILLIPS.

(Circuit Court of Appeals, Second Circuit. January 29, 1912.)

No. 157.

1. BANKRUPTCY (§ 81*)—INVOLUNTARY PETITION—ALLEGATIONS—REQUISITES.

A general averment in an involuntary petition in bankruptcy that the alleged bankrupt within four months preceding the date of the filing of the petition committed an act of bankruptcy, in that, while insolvent, he transferred a part of his property to creditors with intent to prefer them, and transferred and concealed large sums of money and valuable securities, with intent to defraud his creditors, and that the concealment was a continuous one, is too vague, and the petition is properly dismissed on demurrer.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 113–118; Dec. Dig. § 81.*]

2. BANKRUPTCY (§ 84*)—INVOLUNTARY PETITION—AMENDMENTS—DISCRETION OF COURT—REVIEW.

The privilege of amending an involuntary petition in bankruptcy rests in the discretion of the court, reviewable only where the discretion has been abused.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 126–129; Dec. Dig. § 84.*]

3. BANKRUPTCY (§ 92*)—INVOLUNTARY PETITION—DISMISSAL.

Where a bankrupt moved to dismiss the involuntary proceedings against him and gave notice thereof to all his creditors, as required by Bankr. Act July 1, 1898, c. 541, § 59g, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3445) as amended by Act June 25, 1910, c. 412, § 10, 36 Stat. 841, and all the creditors, save one, freely assented to a dismissal, the petition must be dismissed.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 133–136; Dec. Dig. § 92.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**4.** BANKRUPTCY (§ 92*)—INVOLUNTARY PROCEEDINGS—DISMISSAL—JURISDICTION OF COURT.

Where the court dismissed a petition in bankruptcy by a creditor, whose claim was disputed, it was without jurisdiction to determine the validity of the claim.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 92.*]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

Petition in involuntary bankruptcy by creditors of Sig. H. Rosenblatt & Co., alleged bankrupt, in which James Phillips filed an intervening petition in bankruptcy. From an order dismissing the proceedings on sustaining demurrers to the petitions, the intervener brings petition to revise orders. Affirmed, with directions.

This cause comes here upon petition to revise certain orders. The petitioner claims to be a creditor of the alleged bankrupts to the amount of $25,000. They dispute this claim, insisting that he is their debtor. The principal orders sought to be reviewed overruled an original petition in involuntary bankruptcy, brought by three creditors, and an intervening petition in bankruptcy brought by Phillips, the petitioner here; and an order dismissing the proceedings in bankruptcy.

David B. Simpson (Irving L. Ernst and Abraham Gruber, of counsel), for petitioner.

James, Schell & Elkus (Robert P. Levis, Abram I. Elkus, and James N. Rosenberg, of counsel), for respondent.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] The act of bankruptcy charged in the original petition is as follows:

"Your petitioners further allege, upon information and belief, that the said Sig. H. Rosenblatt & Co., while insolvent, and within four months next preceding the date of the filing of this petition, committed an act of bankruptcy, in that they did heretofore and within said four months next preceding the date of the filing of this petition, and while insolvent, transfer a certain portion of their property to one or more of their creditors with intent to prefer such creditors over their other creditors."

The act of bankruptcy charged in the intervening petition is as follows:

"Your petitioner further alleges upon information and belief that within four months prior to the filing of said petition, and at the present time the above-named alleged bankrupts have transferred and concealed large sums of money and valuable securities with the intent on their part of hindering, delaying, and defrauding their creditors, and particularly your petitioner, and that said concealment was and is a continuous concealment, and at the time of said removal and concealment, said alleged bankrupts were and are hopelessly insolvent."

Neither of these petitions gives any details as to the date of the alleged preferences, the amount of the preferences, the persons preferred, the amount of the alleged fraudulent transfers, the dates

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the transfers, the persons to whom, or the amount of the property. No word appears as to what property was concealed, with whom, at what time, nor whether the concealed property is still in the possession, or control of the alleged bankrupts.

It is well settled that such general averments, without any specification sufficient to ·apprise the alleged bankrupt of the charge against him so as to enable him to answer it, are too vague and general. Many of the authorities supporting this proposition will be found in the single case which petitioner cites—In re Bellah (D. C.) 116 Fed. 69. In that case the charge was concealment of assets, and the petition averred that the particular asset concealed and secreted was the sum of $29,435.25, which as administrator of the estate of Edward T. Bellah, deceased, the alleged bankrupt turned over to himself as his individual share of such estate, as appeared by his accounts passed before the register of wills for Newcastle county, Del., on December 31, 1900. After referring with approval to the general rule which requires the assertion of more than mere vague generalities, the court in the Bellah Case differentiated the petition there under consideration, saying:

"The source, identity, amount, and receipt by the bankrupt of the fund are distinctly and with particularity set forth: Objection is based solely on the ground that petitioners have failed to specify any particular act of concealment or to show how, when or where such concealment was effected."

This is a very different situation from the one before us, and we fully concur in the decision of the District Court upon the demurrer.

[2] It is contended that petitioner should have been given an opportunity to amend, although his request so to do set forth no additional facts. The privilege of amendment was a matter resting the discretion of the court, not to be reviewed except when such discretion has been abused.

[3] In view of the dismissal of the proceedings, referred to below, we think such discretion was wisely exercised in refusing leave to amend.

Section 59g of the bankruptcy act (as amended by Act June 25, 1910, § 10, 36 Stat. 841) provides:

"A voluntary or involuntary petition shall not be dismissed by the petitioner or petitioners or by consent of the parties until after notice to the creditors, and to that end the court shall before entering an application for dismissal, require the bankrupts to file a list under oath of all his creditors with their addresses, and shall cause notice to be sent to all such creditors of the pendency of such application, and shall delay the hearing thereon for a reasonable time to allow all creditors and parties in interest an opportunity to be heard."

At about the time demurrers were filed the bankrupts gave notice of motion to dismiss the proceedings, and complied strictly with the provisions of this section requiring notice of such application to be given all creditors. At the hearing it appeared that the total indebtedness (including Phillips' claim of $25,000) was, in round numbers, $690,000, owing to 191 creditors. Seventy creditors whose claims amounted to $22,000 were secured. Only four creditors, exclusive of Phillips, had failed to consent to the dismissal, their claims

aggregating $3,668.44. Of these four two had attached credit balances in certain banks in Europe subsequent to the filing of the petition, and accordingly could not come into the bankruptcy proceedings without surrendering their preferences. The two remaining nonassenting creditors (their claims amounted to $239.71) appeared at the hearing and consented to the dismissal. This left Phillips, with a disputed claim, standing alone. There were no longer three bona fide creditors whose claims amounted to $500 insisting on the prosecution of bankruptcy proceedings.

Upon this state of facts we concur with the district judge in the conclusion that the first duty of the bankruptcy court is to administer or dispose of the estate in the interest of the creditors, and that where practically all of them assent to dismissal, either affirmatively or by failure to oppose, and the statutory three creditors are not found insisting on a continuance of the proceeding, and no deception is suggested to have been practiced on the creditors, it should be dismissed.

[4] The court further ordered that, after dismissal, it would entertain jurisdiction to determine the controversy between Phillips and the firm as to which was the debtor and which the creditor. It also required the alleged bankrupts to execute a bond to secure any award which might be made to Phillips as a result of such inquiry; and required Phillips if he wished to avail of it to bring on his claim for a hearing not later than September 15, 1911. We think that, after dismissal of the bankruptcy proceeding, the court would have no jurisdiction to hear and determine such a controversy between Phillips and the firm. In affirming the order below, so much of it as provides for this hearing after dismissal should be struck out.

The petition to revise some additional orders touching examination of the alleged bankrupts being disposed of by dismissal of the proceedings need not be here considered.