In re HALLIN.

(District Court, W. D. Michigan, S. D.    October 30, 1912.)

1. BANKRUPTCY (§ 57*)—ACTS OF BANKRUPTCY—BONUS TO LENDER.

An alleged bankrupt executed a chattel mortgage for $475, covering a stock of goods, receiving from the lender $450 in cash; the balance being a bonus of extra interest demanded by the lender for making the loan. Of the amount received, the borrower paid $300 to cancel and discharge a prior mortgage existing on the same property, and of the remainder $50 was paid to a bank to take up a note previously given by him for money with which to pay a merchandise account to another creditor. *Held,* that the payment of the bonus did not constitute an act of bankruptcy, on the theory that it was a conveyance of the debtor's property with intent to hinder, delay, or defraud creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 232–236; Dec. Dig. § 57.*]

2. BANKRUPTCY (§ 58*)—ACTS OF BANKRUPTCY—PREFERENCES.

The payment of a $50 note to a bank did not constitute an act of bankruptcy, as a payment in full to one creditor with intent to prefer it.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 263–277; Dec. Dig. § 58.*]

3. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—PETITION.

An involuntary bankruptcy petition alleged that the debtor was insolvent, that he had committed acts of bankruptcy, in that, on May 29, 1912, he gave a chattel mortgage covering certain of his assets with intent to hinder, delay, and defraud his other creditors, that on the same date he transferred and conveyed certain of his property to one of his creditors, whose name was unknown, but which could be ascertained by reference to the files of the village clerk at F., with intent to hinder, delay, and defraud his other creditors, that on the same date he did transfer certain of his property to creditors, whose names were unknown, with intent to prefer such creditors over other creditors of the same class, and that on the same date he did convey certain of his property with intent to hinder, delay, and defraud his creditors. *Held* that such petition was insufficient, in that it did not set forth any act of bankruptcy with sufficient particularity.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 370–423; Dec. Dig. § 81.*]

In Bankruptcy. In the matter of bankruptcy proceedings against Oscar E. Hallin. On application for adjudication. Denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Arthur E. Fixel and Max H. Finkelston, both of Detroit, Mich., for petitioning creditors.

E. L. Brooks, of Fremont, Mich., for alleged bankrupt.

SESSIONS, District Judge. On September 27, 1912, three of the creditors of Oscar E. Hallin, whose claims aggregate upwards. of $1,500, filed a petition praying that Hallin be adjudicated an involuntary bankrupt. The alleged acts of bankruptcy are set forth in the petition as follows:

"And your petitioners further represent that said Oscar E. Hallin is insolvent, and that within four months next preceding the date of this petition the said Oscar E. Hallin committed an act of bankruptcy, in that he did heretofore, to wit, on the 29th day of May, 1912, give a certain mortgage for four hundred and seventy-five ($475) dollars, covering certain of the assets of said alleged bankrupt, which mortgage was given with the intent to hinder, delay, and defraud the other creditors of said bankrupt.

"And your petitioners further represent that the said Oscar E. Hallin, while insolvent and within four months next preceding the date of this petition, committed another act of bankruptcy, in that he did heretofore, to wit, on the 29th day of May, 1912, transfer and convey certain of his property to one of his creditors, the name of whom is not known, but which can be ascertained by reference to the files of the village clerk at Fremont, Mich., with intent to hinder, delay, and defraud his other creditors.

"And your petitioners further represent that the said Oscar E. Hallin is insolvent, and that while insolvent, and within four months next preceding the date of this petition, the said Oscar E. Hallin committed another act of bankruptcy, in that he did heretofore, to wit, on the 29th day of May, 1912, transfer certain of his property to creditors whose names are unknown, with the intent to prefer said creditors over his other creditors of the same class.

"And your petitioners further represent that the said Oscar E. Hallin, within four months next preceding the date of this petition, committed another act of bankruptcy, in that he did heretofore, to wit, on the 29th day of May, 1912, convey certain of his property with the intent to hinder, delay, and defraud his creditors."

[1] The alleged bankrupt entered and filed a denial of bankruptcy, and demanded a trial by the court, which has been had. At the trial it was made to appear by the evidence that on the 29th day of May, 1912, Hallin executed and delivered to Charles B. Buck a chattel mortgage in the sum of $475, covering his stock of goods. At that time Mr. Buck paid to Mr. Hallin $450 in cash, the remaining $25 being a bonus or extra interest demanded by and paid to Mr. Buck for making the loan. Of the amount so received by the alleged bankrupt, upwards of $300 was paid to cancel and discharge a chattel mortgage previously existing upon the same property, and $50 was paid to a bank to take up and pay a note of that amount previously given by him to raise money with which to pay a merchandise account owing to another creditor.

Petitioners now concede that the giving of the chattel mortgage under the circumstances was not in itself an act of bankruptcy, but insist that the including in the chattel mortgage of the sum of $25 as a bonus or extra interest, and the payment of the bank note in full, each constituted an act of bankruptcy within the purview of the statute. In other words, petitioners now claim that the giving of the mortgage for $25 more than the actual amount of

money borrowed or received by the mortgagor constituted a conveyance of the debtor's property with intent to hinder, delay, or defraud his creditors, and that the payment in full, while insolvent, of the note to the bank, constituted a transfer of a portion of his property to one of his creditors, with the intent to prefer such creditor over his other creditors.

[2] The evidence fairly shows that at the time of the giving of the chattel mortgage on May 29th the alleged bankrupt was insolvent, although the margin or difference between his debts and the value of his assets was not large, and the excess of his debts over the fair value of his property was not sufficient to be of much, if any, evidential force or effect upon the question of his intent. Nor is there any satisfactory evidence that he then knew or believed himself to be insolvent. It is true that his creditors were pressing him for payment, and that he did not have the money to meet his past-due bills. It is also true that his credit was very limited. On the other hand, he had quite an amount of outstanding accounts belonging to him, and the evidence fairly establishes that he was endeavoring to pay his debts in full, and falls far short of proving an intent on his part either to defraud his creditors or to prefer one creditor over the others. The note at the bank seems to have been paid in the ordinary course and in the expectation of continuing in business, and at least in the hope of ultimately paying all of his obligations. It was a just debt, small in proportion to the entire amount of his debts, and the preference given was almost trifling. Goodlander-Robertson Lumber Co. v. Atwood, 152 Fed. 978, 82 C. C. A. 109, 18 Am. Bankr. Rep. 510; Clark v. Henne & Meyer, 127 Fed. 288, 62 C. C. A. 172, 11 Am. Bankr. Rep. 583; Loveland on Bankruptcy, page 320.

While the contract to pay a bonus or extra interest was unlawful, and could not be enforced by the mortgagee, yet it is a matter of common knowledge that lenders of money upon chattel security usually exact from the unfortunate borrower something in the way of a bonus. In complying with such a demand the alleged bankrupt did no more than is often done in such cases, and there is an entire lack of evidence to impeach his good faith, or to show that he intended to hinder, delay, or defraud his creditors. In fact, the proofs negative the existence of any such intent on his part.

[3] It is evident, also, that the petitioners, in their vague, uncertain, and unsatisfactory allegations relating to the giving of the chattel mortgage, did not refer, or intend to refer, to the fact that the mortgage was given for an excessive amount. It is only after the proofs have developed this slight irregularity that the present claim is made, and it now comes too late.

The petition itself is wholly insufficient, in that it does not set forth any act of bankruptcy with the required particularity as to essential data and details, does not apprise the alleged bankrupt of what he is to be called upon to meet, and, therefore, does not warrant the granting of any relief. In re Rosenblatt & Co., 193 Fed. 638, 113 C. C. A. 506, 28 Am. Bankr. Rep. 401; In re Pure Milk

Co. (D. C.) 154 Fed. 682, 18 Am. Bankr. Rep. 735; In re Blumberg (D. C.) 133 Fed. 845, 13 Am. Bankr. Rep. 343; Clark v. Henne & Meyer, 127 Fed. 288, 62 C. C. A. 172, 11 Am. Bankr. Rep. 583; In re Nelson (D. C.) 98 Fed. 76, 1 Am. Bankr. Rep. 63.

An order will be entered dismissing the petition.