## In re McGRAW.

(District Court, N. D. West Virginia. December 3, 1918.)

1. BANKRUPTCY ⬅81(1)—PETITION—SUFFICIENCY.

In involuntary proceedings, the petition must affirmatively and distinctly show the essential facts necessary to give the bankruptcy court jurisdiction.

2. PLEADING ⬅8(1)—PETITION—SUFFICIENCY—CONCLUSIONS.

In involuntary proceedings, general averments in the petition of legal conclusions are not sufficient.

3. BANKRUPTCY ⬅81(4)—PETITION—SUFFICIENCY.

In involuntary proceedings, averments of acts of bankruptcy in the language of the statute, unaccompanied by a statement of facts affirmatively showing them to exist, are insufficient.

4. BANKRUPTCY ⬅81(4)—PETITION—SUFFICIENCY.

In involuntary proceedings, the statement in the petition of the acts of bankruptcy should allege the specific facts relied on, with time, place, and circumstances, so that the alleged bankrupt may be distinctly apprised of what he is required to answer.

5. BANKRUPTCY ⬅81(4)—PETITION—SUFFICIENCY.

The allegation of acts of bankruptcy in a petition in involuntary proceedings must be based on something more than hearsay, rumors, or suspicion.

6. BANKRUPTCY ⬅56—ACTS OF BANKRUPTCY—ENUMERATION.

The various acts of bankruptcy which support a petition in involuntary proceedings enumerated.

7. BANKRUPTCY ⬅59—ACTS OF—SUFFERING CREDITOR TO OBTAIN PREFERENCE.

Under Bankruptcy Act, § 3, subd. a3 (Comp. St. 1916, § 9587), setting forth as an act of bankruptcy the suffering or permitting while insolvent any creditor to obtain a preference through legal proceedings, and not having, at least five days before a sale, etc., vacated such preference, an insolvent debtor does not commit an act of bankruptcy merely by inaction for four months after levy of an execution on his realty, but it must appear that he failed at least five days before the date fixed for sale to discharge or vacate the same, and such failure occurred in the four months period.

8. BANKRUPTCY ⬅81(4)—PETITION—SUFFICIENT.

An involuntary petition, alleging that the alleged bankrupt suffered creditors to obtain preferences by legal proceedings, held not to sufficiently allege acts of bankruptcy specified by Bankruptcy Act, § 3, subd. a3 (Comp. St. 1916, § 9587).

9. BANKRUPTCY ⬅81(4)—PETITION—SUFFICIENT.

An involuntary petition held insufficient, not showing that the judgments against the alleged bankrupt asserted to have been acts of bankruptcy were recovered in the four months period.

10. JUDGMENT ⬅784—LIEN—PRIORITY.

As a term of court in West Virginia may last a number of days or weeks, judgments rendered at various times during the term are presumed, as regards priority between themselves, to relate back to the first day of the term, and as liens they are equal, although the lien to be preserved, etc., must be docketed in accordance with Code W. Va. 1913, c. 139, § 6 (sec. 5098).

11. BANKRUPTCY ⬅81(4)—PETITION—SUFFICIENCY.

A petition in involuntary proceedings held insufficient in its allegation of acts of bankruptcy, failing to state specific facts, etc.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

12. BANKRUPTCY ⊕81(4)—PETITION—SUFFICIENCY.

An amended petition in involuntary proceedings, averring the alleged bankrupt suffered creditors to obtain preferences by legal proceedings, *held* insufficient to allege acts of bankruptcy specified by Bankruptcy Act, § 3, subd. a3 (Comp. St. 1916, § 9587).

13. BANKRUPTCY ⊕81(4)—PETITION—SUFFICIENCY.

An involuntary petitioning, setting up alleged acts of bankruptcy concerning the sale of property, etc., *held* insufficient to show an act of bankruptcy.

14. BANKRUPTCY ⊕59—ACTS OF—WHAT CONSTITUTES.

For a bankrupt to suffer sale of the property to satisfy a special and superior lien, such as a purchase-money lien, does not constitute an act of bankruptcy.

15. BANKRUPTCY ⊕56—ACTS OF—WHAT CONSTITUTES.

Where no depletion of his estate occurs as result of the debtor's removal of his property from one place to another, such removal is not an act of bankruptcy of which creditors can complain.

16. BANKRUPTCY ⊕81(4)—PETITION—SUFFICIENCY.

A petition in involuntary proceedings, which set up the debtor's removal of certain property as an act of bankruptcy, is insufficient, without allegations that the acts complained of occurred within four months of institution of the proceedings.

17. BANKRUPTCY ⊕81(4)—PETITION—SUFFICIENCY.

A petition in involuntary proceedings, which set up as an act of bankruptcy the debtor's transfer to his sister of part of the royalty derived from a lease of coal lands, etc., *held* defective for failure to allege the transfer occurred within four months of the filing of the original petition.

18. BANKRUPTCY ⊕81(4)—PETITION—SUFFICIENCY.

Allegations in a petition in involuntary proceedings that the alleged bankrupt paid depositors in a bank, etc., *held* insufficient to show an act of bankruptcy.

19. BANKRUPTCY ⊕81(4)—PETITION—SUFFICIENCY.

Allegations in an amended petition in bankruptcy that, since the filing of the original petition, the alleged bankrupt suffered and permitted the circuit court in chancery causes to render a decree of sale of his real estate for liens, etc., *held* not to show an act of bankruptcy.

20. EXECUTION ⊕21—SALE OF LANDS.

In West Virginia land cannot be sold under execution, but after execution has been returned nulla bona the judgment creditor may institute his suit in equity to sell real estate, and if such real estate will not rent for enough to in five years pay all liens and costs, it is the practice to appoint special commissioners to make sale, etc.

21. BANKRUPTCY ⊕60—ACTS OF—WHAT CONSTITUTES.

The appointment of special commissioners to sell West Virginia lands of a judgment debtor, execution having been returned nulla bona, etc., *held* not to constitute an act of bankruptcy by the debtor, on the theory such appointment amounted to a general assignment, or applying for or permitting of appointment of a trustee or receiver.

22. BANKRUPTCY ⊕84—PETITION—AMENDMENT.

A petition in involuntary proceedings may be amended, Order XI (89 Fed. vii, 32 C. C. A. xiv), providing for application for leave to amend; but the conditions under which amendments may be made, and the extent thereof, rest in the sound discretion of the court.

23. BANKRUPTCY ⊕84—PETITION—AMENDMENT.

While the power of amendment is substantial, etc., *held* that, in view of Order XI (89 Fed. vii, 32 C. C. A. xiv), an amendment to an involun-

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tary petition relating solely to the material facts respecting the acts of bankruptcy, and including charges of happenings since the filing of the original petition, should not be allowed.

In Bankruptcy. In the matter of John T. McGraw, alleged bankrupt. On motion of the alleged bankrupt to dismiss the original and amended petitions. Petitions and whole cause dismissed.

A. W. Burdett, of Grafton, W. Va., for petitioners.
John L. Hechmer, of Grafton, W. Va., for alleged bankrupt.

DAYTON, District Judge. Three creditors have filed an original and an amended and supplemental petition herein, seeking to have the defendant, McGraw, adjudged a bankrupt. He has appeared and moved the dismissal of these petitions, filing in writing a number of grounds in support thereof, material ones of which are: (1) That, as to the amended and supplemental petition, it cannot be considered properly in court, not having been filed upon written application made to the court, with notice thereof given to the defendant, in which application excuse is given for such amendment; and (2) that the acts of bankruptcy, charged in both the original and amended petitions, either (a) are not supported by sufficient allegations of fact, or (b) the facts as alleged in both petitions show, on their face, that the acts of bankruptcy charged are not so in law and fact.

[1-5] Involuntary proceedings in bankruptcy, being, in theory, prosecuted against the will of defendant, necessarily vary greatly from voluntary ones, as regards the allegations of their pleadings; therefore it has been settled by numerous precedents: (1) That the essential facts necessary to give the bankruptcy court jurisdiction in such cases must appear affirmatively and distinctly; (2) that general averments of legal conclusions are not sufficient; (3) nor are averments of the acts of bankruptcy in the language of the statute, unaccompanied by a statement of facts affirmatively and distinctly showing them to exist; (4) such statement should state the specific facts relied on, with time, place, and circumstances, so that the alleged bankrupt may be distinctly apprised of what he is required to answer; and (6) it must be based upon something more than hearsay, rumors, or suspicion. In re Plotke, 104 Fed. 964, 44 C. C. A. 282; Clark v. Henne & Meyer, 127 Fed. 288, 62 C. C. A. 172; In re Rosenblatt & Co., 193 Fed. 638, 113 C. C. A. 506; In re Bellah (D. C.) 116 Fed. 69; In re Mero (D. C.) 128 Fed. 630; In re Blumberg (D. C.) 133 Fed. 845; In re Pure Milk Co. (D. C.) 154 Fed. 682; In re Hallin (D. C.) 199 Fed. 806; In re Farthing (D. C.) 202 Fed. 557; In re Truitt (D. C.) 203 Fed. 550; In re Deer Creek Water Co. (D. C.) 205 Fed. 205.

[6-8] Preliminary to applying these rules to the charges of the petitions presented here, it is pertinent to call attention to the fact that the bankruptcy court is always limited in assuming jurisdiction, where adjudication is opposed, to a condition where the acts of bankruptcy have been committed within 4 months of the filing of the petition for adjudication; and, further, that the only acts warranting such adjudication, as provided by the statute, are: (1) A conveyance, trans-

fer, concealment, or removal of any part of his property, made or suffered to be made by the debtor, with intent to hinder, delay, or defraud his creditors, or any of them; (2) by transfer, when insolvent, by the debtor of any portion of his property to one or more of his creditors, with intent to prefer such creditor over his other creditors; (3) by suffering, while insolvent, any creditor to obtain a preference through legal proceedings, and not having, at least 5 days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference; (4) by making a general assignment for benefit of creditors, or, being insolvent, applying for the appointment of a receiver or trustee for his property, or, by reason of such insolvency, the appointment and putting in charge of such receiver or trustee his property, under the laws of a state or territory of the United States; and (5) by reason of written admission of inability to pay his debts and willingness to be adjudged bankrupt on that ground. The original petition in this matter was filed on June 30, 1917, and the amended and supplemental one on November 19, 1917. In the original, the acts of bankruptcy charged, in the order therein stated, are: (a) A transfer within four months of a large amount of property to certain creditors with a design to give them preference over other creditors, based on the second one of the acts defined by the statute; (b) suffering certain creditors to obtain preferences through legal proceedings, the third act set forth in the statute; and (c) transferring, concealing, etc., a large portion of property, with intent to defraud, the first act of bankruptcy set forth in the statute.

In support of these charges the material facts set forth are:

(a) That at the January term of the circuit court of Taylor county, which term adjourned on March 8, 1917, the alleged bankrupt procured, suffered, and permitted one Anna Jarvis to obtain by default against him a judgment for the sum of $6,390, with interest from January 22, 1917, and $15.65 costs, and that such judgment was, on the 20th day of April, 1917, recorded in the lien docket of the county, remains in full force, has not been vacated or discharged, and creates a preference.

(b) That at the same January term, 1917, of said court, he suffered Fred W. Bartlett to obtain a judgment by default against him for $2,743.31, with interest from December 5, 1916, and costs, which judgment was duly recorded in the judgment lien docket on March 16, 1917; that the same constitutes a lien against his real estate, has not been vacated or discharged, and created a preference.

(c) That he has received a large amount of dividends, the amount unknown to petitioners, within 4 months of the filing of the petition, from the Grafton Coal & Coke Company, a corporation which amounts he has concealed and refused to pay to his creditors.

(d) "That he has other large income which has, within four months of the date of this petition, the amounts of which are unknown to petitioners, from royalties on coal leased by him, been paid to other parties unknown to petitioners, which has been procured, suffered, and permitted to be so paid by the said McGraw, and to parties unknown

to petitioners, with the intent to hinder, delay, and defraud his creditors."

The construction of section 3, subdivision a3, of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 546 [Comp. St. 1916, § 9587]), setting forth as an act of bankruptcy the suffering or permitting, while insolvent, any creditor to obtain a preference through legal proceedings, and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference, gave rise to contradictory decisions in the federal courts of the country. The conflict arose over this question: If an insolvent debtor suffered or permitted one of his creditors to secure a lien upon his real estate, by judgment or other legal proceeding, which lien was allowed to remain undischarged and unvacated until the lapse of 4 months was about to render it unassailable in bankruptcy, was this an act of bankruptcy? Such cases as In re Tupper (D. C.) 163 Fed. 766, and Folger v. Putnam, 194 Fed. 793, 114 C. C. A. 513, held it to be so. Such cases as In re Vasbinder (D. C.) 126 Fed. 417; In re Windt (D. C.) 177 Fed. 584, and In re Truitt (D. C.) 203 Fed. 550, held it not to be so. The question was finally certified to the Supreme Court, and there decided in Citizens' Bank v. Ravenna Bank, 234 U. S. 360, 34 Sup. Ct. 806, 58 L. Ed. 1352, that:

"An insolvent debtor does not commit an act of bankruptcy, rendering him subject to involuntary adjudication as a bankrupt under the Bankruptcy Act of 1898, merely by inaction for the period of 4 months after levy of an execution upon his real estate.

"All of the three elements specified in section 3a(3) of the Bankruptcy Act of 1898 must be present in order to constitute an act of bankruptcy within the meaning of that provision."

This finally settles the matter. The rendering of a judgment, therefore, can only constitute an act of bankruptcy when (a) the debtor is insolvent, (b) has within 4 months of the filing of the bankruptcy petition suffered and permitted it to be obtained, (c) upon which execution has issued, (d) been levied upon his property, (e) such property advertised for sale, and (f) he has failed, at least 5 days before the date fixed for sale, to discharge or vacate the same; and all these prerequisites must occur within 4 months of the filing of the petition.

In this case, this disposes of the alleged acts of bankruptcy based upon the rendition of the Jarvis and Bartlett judgments. It is not alleged that any executions have issued upon these judgments, been levied upon McGraw's property, with sale thereof advertised, and a failure to vacate and discharge 5 days before such sale.

[9, 10] Another fatal objection might, too, be set forth to the sufficiency of the allegations as to these judgments being suffered to be rendered within 4 months, or at least to one of them. Counsel apparently have assumed that the four months period within which they could be assailed runs from the date when they are recorded in the lien docket in the county court clerk's offce. This is clearly wrong. The date from which the four months period begins to run is that of the day when the judgment is entered of record by the court having jurisdiction of the action.

Under the laws of West Virginia a term of a circuit court may run over a number of days or weeks. If it does, judgments rendered upon different days of such term against the same debtor, as regards their priority between themselves, are presumed to relate back to the first day of the term, and as liens are equal in priority, provided the cases were matured for trial before the term commenced, and did not mature after it commenced. No such judgment, however, is a lien on real estate as against a purchaser thereof for valuable consideration without notice, unless it be docketed in the county wherein such real estate is, either within 60 days next after the date of the judgment, or before a deed therefor to said purchaser is delivered for record to the clerk of the county court. Chapter 139, § 6, Code W. Va. (sec. 5098). The docketing of a judgment is merely for the purpose of preserving its lien, or, more accurately speaking, to give notice of its lien to prospective purchasers, who would otherwise be innocent of its existence; and even they must run the risk of such lien existing for 60 days after it has been rendered by a circuit court, for the creditor has that period given him by the statute within which to docket it. The lien dockets are kept by the clerks of the county courts, which have no judicial power to try cases and render judgments.

Here it is apparent that one of these judgments, the Jarvis one, was actually rendered January 22, 1917, more than 4 months before the petition herein was filed and as to the Bartlett one, it is alleged it was recovered at the same term; but the exact day is not disclosed, so as to enable us to determine whether it was likewise more than 4 months old or not.

[11] As to the allegations of fact in the last two paragraphs of this original petition, I am constrained to hold that they do not comply with several of the rules established by the precedents. The two are alike, and may be considered together, as seeking to establish either one or the other of the first two acts of bankruptcy as defined by the statute. In effect they charge: (a) That the alleged bankrupt had within 4 months received a large unknown amount of dividends from the Grafton Coal & Coke Company, which he has concealed and refused to pay to his creditors; and (b) has large incomes, unknown in amount, from royalties on coal leased by him, which he has allowed to be paid to unknown parties, with intent to hinder, delay, and defraud his creditors.

They fail, in that they do not state specific facts, such as time, place, and circumstance, so that the defendant may be distinctly apprised of what he is required to answer. The ruling in Re Rosenblatt & Co., 193 Fed. 638, 113 C. C. A. 506 (2d Cir.), is directly in point. It is there held:

"A general averment in an involuntary petition in bankruptcy that the alleged bankrupt within four months preceding the date of the filing of the petition committed an act of bankruptcy, in that, while insolvent, he transferred a part of his property to creditors with intent to prefer them, and transferred and concealed large sums of money and valuable securities with intent to defraud his creditors, and that the concealment was a continuous one, is too vague, and the petition is properly dismissed upon demurrer."

It clearly appears the allegations, so held to be too vague in that case, were less so than those here. See, also, In re Hallin, 199 Fed. 806, and authorities therein cited.

The original petition being demurrable, the next question presents itself in a twofold aspect: (a) How far its defects could be remedied by amendment; and (b) how far are they in fact remedied by the amended and supplemental petition filed here?

[12] In alleging material facts, in support of alleged acts of bankruptcy, it (1) reiterates the charges of the original petition as regards the rendition and existence of the Jarvis and Bartlett judgments, but does not allege that any executions have issued thereon, been levied on property, sale thereof directed, and failure to discharge at least 5 days before sale. It then charges that, since the filing of the original petition, and within 4 months of the filing of this amended and supplemental one, the Farmers' Bank of Clarksburg, in the circuit court of Harrison county, on May 9, 1917, has recovered a judgment, which has not been paid and its preference vacated and discharged. Here, too, there is no allegation of the issue of execution, levy on property, sale directed, or the failure to vacate the preference 5 days before the day of sale.

It is apparent, from what has been hereinbefore said, that these allegations of fact are not sufficient to establish acts of bankruptcy under the decision of the Supreme Court in Bank v. Bank, 234 U. S. 360, 34 Sup. Ct. 806, 58 L. Ed. 1352.

[13, 14] The next allegation of fact in effect is that McGraw, on the ———— day of June, 1917, purchased from Weekley, receiver of the Grafton Bank, what is known as the Grafton Bank property, at the price of $10,500; that petitioners "are informed, believe, and charge" that he paid $3,000 of the purchase price, took possession, expended a large sum in repairs, and has failed to comply with the terms of sale; that Weekley is now proceeding to readvertise and sell on December 1, 1917, and "has applied or will apply the cash payment thereon to McGraw's credit on judgments recovered by the Grafton Bank, thereby preferring said bank over petitioners and other creditors."

It seems to me this charge must be held insufficient for several reasons:

First. So far as allegations of the payment of the $3,000 on the purchase price of this bank property, and its application, made or to be made, to the bank's judgments, are concerned, they are made solely upon information and belief and are under the ban of the ruling in such cases as In re Blumberg (D. C.) 133 Fed. 845.

Second. It is not charged that the purchase of this bank property was made by McGraw by reason of any fraudulent collusion with Weekley, the receiver, to make it the method of preferring the bank, or in short with any purpose to hinder or delay or defraud his creditors. On the contrary, the reasonable presumption arises that such purchase was made openly by him, knowing that he was indebted, but regarding himself as solvent. The Bankruptcy Law does not warrant the assumption that one, indebted to an extent that may even-

tually amount to insolvency, is compelled to stop business, make no investments, and buy no property, but in effect stand still, and see if bankruptcy proceedings are instituted against him. He can go on increasing his estate by purchases of property, surely, unless such purchases are made with fraudulent design.

Third. We are wholly uninformed as to how old the bank's judgments were, or whether executions were outstanding at the time upon those judgments, which would constitute a lien upon the money paid in the purchase to its receiver. If so, it might be entirely legal for the receiver to apply it on such executions. Such application would not create a "preference" as against petitioners and other unsecured creditors. It is constantly to be borne in mind that the Bankruptcy Law does not, on general principles, undertake to fight the battle of lienholders, or to settle controversies arising solely between them. Its care is to protect and secure the rights of unsecured creditors.

Fourth. The resale of the property, while charged to have been advertised, was not within the 5-day limit before which a preference, if any existed, had to be vacated; and, above all, it was to be made for a purchase-money lien, secured, it is fair to assume, either by vendor's lien retained in the deed made by the receiver to McGraw for the property, or, which is more likely, by the retention of the legal title by the receiver. The suffering of such sale of property to satisfy such a special and superior lien does not constitute an act of bankruptcy in any event, under the principles enunciated by the Circuit Court of Appeals of this Circuit in Richmond Standard Steel Spike & Iron Co. v. Allen, 148 Fed. 657, 78 C. C. A. 389.

[15, 16] The next charge is to the effect that the alleged bankrupt is the owner of the Willard Hotel in Grafton and of a residence property in Oakland, Md., and has conveyed or removed a large part of his personal property, consisting of rugs, furniture, and other articles, from the hotel to such residence. The defects in this charge are: First, its allegations are made on information and belief solely; second, they are too vague and indefinite; third, no depletion of estate is charged or shown, and, where there is none, creditors cannot complain (Collier [11th Ed., 1917] p. 101); fourth, no allegation of such removal having been made within 4 months of the institution of this proceeding is made, and this alone is a vital objection.

[17] The sum and substance of the next charge is that McGraw leased some coal land to the Delmar Coal Company, from which he was to receive a minimum royalty of $250 per month, this back in 1911; that at some time not stated he transferred to his sister, Mrs Warder, the sum of $150 per month therefrom; and that she has, for the months of April, May, and June, 1917, each within 4 months of the filing of the original petition, been paid and received this $150 of transferred royalty by the company. When this transfer was made, as stated, is not alleged; but it is alleged:

"That said Delmar Coal Company, prior to the said 4 months, paid from month to month for a long period of time to the said Minnie McGraw Warder the said sum of $150 per month at the request, permission, and order of said McGraw, without consideration, and while he the said John T. McGraw, was so insolvent, with intent to hinder, delay, and defraud petitioners and other

254 F.—29

creditors of McGraw. That the said Delmar Coal Company, since the filing of the original petition herein, at the request, permission, and order of said McGraw, and while so insolvent, continued to pay to said Minnie McGraw Warder the said sum of $150 per month from the royalties coming to said McGraw, with intent to hinder, delay, and defraud petitioners and other creditors of said McGraw."

From this it is fair to presume that years ago, long before petitioners' debts were incurred, and it may be in 1911, when the lease was made, McGraw, as alleged, "transferred and conveyed, or permitted the same to be transferred and conveyed, to his sister" an interest, to the extent of $150 per month, in this royalty, and that, in consequence, it has ever since been paid to her. The fact that the transfer or conveyance of this interest may have been based upon a consideration of love and affection only is immaterial here, as is also the fact that it has been carried out by payments made under it. That it may come within the ban of the Bankruptcy Act it must appear that the transfer or conveyance itself had been made within 4 months of the filing of the bankruptcy petition, and at the time so made was with the intent, on the part of McGraw, to hinder, delay, and defraud his creditors. It seems clear that neither of these conditions exist.

[18] The next charge is that McGraw, at various times and places, paid to certain depositors of the Grafton Bank large sums of money on their deposits, voluntarily and without value, amounts unknown and parties unknown, but petitioners "are informed, believe, and aver" that five named persons were depositors so paid. It is hardly necessary to point out that this charge, under the authorities cited, is entirely too vague and indefinite. It is based upon information and belief, and the essential details and data necessary to enable us to form any idea of the nature and reason for making such payments are wanting. No relation is shown to have existed between McGraw and this bank that would explain why he should undertake to pay its debts. It can hardly be presumed that any ordinarily sensible man would for no moving cause want to pay such debts, for which he was in no wise responsible. If McGraw did pay them, it is not disclosed whether he took assignments from the depositors so paid. If he did so, it is not disclosed whether or not the investment in such claims was a bad investment or otherwise. These debts due depositors were superior liens upon the bank's assets under the laws; in addition, a double liability upon the bank's stockholders exists to further secure them, and, while it is said the bank's doors were closed, it does not follow that the taking over of its debts due depositors was not a good investment for McGraw and his estate.

The next specification of fact reiterates the one contained in the original petition, to the effect that McGraw has been paid large dividends by the Grafton Coal & Coke Company. The only substantial differences between the two representations are (a) that in the original petition these payments are charged to have been "concealed," while in this amended one this charge of concealment is omitted; and (b) in this amended one a failure of application of these dividends to existing execution liens (not named) is charged.

In addition to what has been said hereinbefore touching this charge, I will only call attention to the case of Conway v. German, 166 Fed. 67, 91 C. C. A. 653, wherein the Circuit Court of Appeals for this circuit has clearly pointed out that general statements of this kind, without setting forth details and essential data, such as time, place, persons, and amounts involved in the transaction, are insufficient.

[19] Finally, it is set forth that since the filing of the original petition—that is, on August 4, 1917 (the certified copy of the decree filed shows it was rendered the 4th day of October, 1917)—the alleged bankrupt suffered and permitted, in three consolidated chancery causes named and described, the circuit court of Webster county to render a decree of sale of his real estate for liens amounting to over $600,000, appointed special commissioners to sell the same, of whom large and excessive bonds have been required; that such decree of sale does not include all of McGraw's real estate lying within the state; that petitioners "are informed, believe, and charge" that a great many of the lienors (naming four), since the filing of the original petition herein, have issued executions and docketed them, in Taylor county (where McGraw resides), thereby claiming liens upon his personal property; that the real estate of McGraw, they are informed and charge, will sell for more than enough to pay the debts decreed against it, and the personal estate should not be incumbered with said execution liens; that McGraw has a large amount of personal property placed as collateral security with various creditors, far in excess of the debts secured, the amount, however, not known (and to whom pledged not stated); that the bankrupt court alone can take jurisdiction and equitably settle the affairs of McGraw, and protect his common creditors, and, it is averred, if it does not take jurisdiction, and enjoin the sale of his real estate about to be sold, the common creditors will realize nothing, and will suffer great loss, if the state court proceedings are permitted to go on to a final sale, and "the said Geo. M. Weekley, receiver, be permitted to sell the said Grafton Bank property as advertised by him"; that McGraw should be required to answer, and show what stocks and bonds are owned by him, where situated, and whether or not the same are up as collateral with any of his creditors, and the amount of the debts for which the same are so held, by whom held, and such collaterally secured creditors should be enjoined from selling such collateral until proper proceedings can be taken in this bankrupt court.

A copy of the decree of sale is filed as an exhibit. It discloses that the state court, through its master, has ascertained and determined McGraw to be the owner of an immense amount of real estate. situate in eight different counties of the state, consisting of hundreds of town lots, large and small tracts of lands in fee, undivided interests in others, and coal and timber rights and interests, upon which more than $600,000 of liens, due to several hundred different persons, firms, and corporations, are existing and are decreed. How complete and accurate the work done is not for me to determine. It is apparent that the costs and expenses involved in the litigation resulting in this decree have been enormous. Petitioners believe the interests of com-

mon creditors, at least, would be promoted by this court taking charge of this immense and very greatly involved estate, and administering it in bankruptcy. I very much doubt it. Be that as it may, however, one thing is sure and certain. It cannot be so administered in this bankruptcy proceeding, against the protest of its owner, unless it affirmatively and definitely appears that he has within 4 months of the filing of the petition (I think the original one) committed one or other of the acts of bankruptcy defined by the statute. The "suffering" this decree to be rendered certainly constitutes no such act under the Supreme Court's ruling in the Citizens' Bank v. Ravenna Bank Case. No sale has been advertised under it, so far as disclosed. A stay of its operation was given to enable an appeal to be taken, but whether taken we are not informed by anything here appearing.

[20, 21] The fourth act of bankruptcy, that of making a general assignment, or applying for or suffering a receiver or trustee to be appointed, has not, in either of these petitions, been set forth and relied upon. If it had been, then a very interesting question, I think of first impression, might be raised, by claiming that the appointment of special commissioners in this decree was equivalent to and came within the meaning and intent of the statute making the appointment of a receiver or trustee an act of bankruptcy; in other words, that such special commissioner is, in the legal intendment of this act, a receiver or trustee. At first it seemed to me that this might be so, but a careful study of the question has led me to the contrary conclusion, especially when applied to legal conditions in this state. In West Virginia real estate cannot be sold under execution. After judgment has been obtained at law, and execution thereon has been returned nulla bona, the judgment creditor is permitted to institute his suit in equity (if no prior one for the same purpose has been instituted) to sell the debtor's real estate. In such equity suit the real estate is ascertained, with the state and condition of its title, the rental value thereof, and all liens thereon. If such real estate will not rent for enough in five years to pay all such liens and the costs, a sale thereof is ordered. Instead of directing the sheriff to make such sale, the usual practice is to appoint one or more special commissioners to make it and report to the court for confirmation. Such special commissioner never takes possession of the real estate, and he does not collect the rents, issues and profits thereof, as does a receiver or trustee. His duties are purely ministerial. His appointment is made by the court to make the sale alone. If, upon his report, the sale is confirmed, the court awards direct to the purchaser a writ of possession that alone judicially gives or warrants such purchaser to take possession. In short, such special commissioner is in effect only a substitute for the sheriff or other public officer required by law in other states to perform these duties, and cannot be held to be a receiver or trustee in the meaning of the Bankruptcy Act.

[22, 23] Counsel for McGraw, in addition to objections to inherent defects in the specifications themselves, strenuously insist that the amended and supplemental petition should be dismissed, because it was not filed by leave of the court, upon written application for

leave to do so, stating the cause of the error in the petition originally filed, and of which application the alleged bankrupt was to be given notice. In support of this contention counsel cite General Order XI (89 Fed. vii, 32 C. C. A. xiv), In re Brincat (D. C.) 233 Fed. 811, 815, and White et al. v. Bradley Timber Co. (D. C.) 116 Fed. 768.

These authorities fully support this view and seem to be based upon sound reason. However, that amendments can be made is clear. When, under what conditions, and to what extent, is subject to the sound discretion of the court (Armstrong v. Fernandez, 208 U. S. 324, 28 Sup. Ct. 419, 52 L. Ed. 514) and as usual, when matters are so subject, confusion has arisen as to what is an exercise of sound discretion in these matters of amendment. There can be no question that written or printed application must be made for leave to amend, in which shall be stated the error in the paper (petition) originally filed, because Order XI expressly so requires. It has been held, however, touching this order, that its purpose is to allow to be made corrections of errors, supply deficiencies, and remove uncertainties, but not practically to repel the legislative requirement that petitions in duplicate must be filed within the 4 months specified (In re Stevenson [D. C.] 94 Fed. 110); that "this power of amendment is substantial and conferred for effecting the broad purposes of the act, and is not confined to niceties of diction or other immaterial or merely formal matters. To hold that it does not embrace the insertion of material and essential averments at any stage of the proceedings before judgment would reduce it to a shadow." In re Mackey (D. C.) 110 Fed. 355, at page 362.

A careful examination of the numerous decisions of the federal courts, so far as I have been able to find them reported, has led me to the conclusion that the most satisfactory rule to determine for what purposes amendments may be made is set forth by the Circuit Court of Appeal for our own circuit in Millan v. Exchange Bank, 183 Fed. 753, 106 C. C. A. 327, where it is said:

"The law is well settled, however, that amendments relating to the number of the petitioning creditors, the amount and nature of their claims, to the occupation of the debtor, and to errors and deficiencies in the verification of the original petition can be made more than 4 months after the commission of the act of bankruptcy. When so made, they relate back to the date of the filing of the original petition. State Bank v. Haswell (8th Circuit) 23 Am. Bankr. Rep. 330, 174 Fed. 209, 98 C. C. A. 217; Ryan v. Hendricks (7th Circuit) 21 Am. Bankr. Rep. 570, 166 Fed. 94, 92 C. C. A. 78; In re Plymouth Cordage Co. (8th Circuit) 13 Am. Bankr. Rep. 665, 135 Fed. 1000, 68 C. C. A. 434; In re Bellah (D. C. Dist. of Del.) 8 Am. Bankr. Rep. 310, 116 Fed. 69."

If the statement of defects that can be cured by amendment set forth in this quotation was designed by the court to be inclusive of all, then this amended petition must inevitably be rejected, for that its amendments, sought to be made, come not within the list allowable. If, however, it is not designed to be inclusive of all allowable causes of amendment, it is sufficient to say the amended petition was not filed in accord with the requirements of Order XI, its allegations relate solely to the material facts relating to the acts of bankruptcy

essential to and the very foundation of the court's jurisdiction, including many charges of happenings since the original petition was filed, and jurisdiction thereby sought to be secured. It seems to me an attempt to amend to this extent goes too far. However, I have not based this decision of the motion to dismiss on this ground, and therefore further discussion is unnecessary.

I am constrained to the conclusion that both petitions, the whole cause, must be dismissed; and it will be so ordered.