## In re TRIANGLE S. S. CO.

## Ex parte FEDERAL TRADE BANKING CORPORATION.

(District Court, S. D. New York. July 10, 1920.)

1. **Bankruptcy** ⊚═81(1)—**Allegation that security held by petitioners is of no value sufficient.**

An allegation in a petition by creditors that certain of the petitioners are secured by maritime liens on vessels, but that the liens are of no value, *held* sufficient on demurrer to show such petitioners qualified under Bankruptcy Act, § 59b (Comp. St. § 9643b).

2. **Bankruptcy** ⊚═81(4)—**Allegations of acts of bankruptcy not sufficiently specific.**

An allegation in a petition by creditors that the alleged bankrupt within four months, with intent to prefer, paid $500,000 on indebtedness to a creditor named and "several persons, firms, and corporations, creditors of said alleged bankrupt, upon antecedent indebtedness," *held* not sufficiently specific.

In Bankruptcy. In the matter of the Triangle Steamship Company, alleged bankrupt. On demurrer to petition by the Federal Trade Banking Corporation. Demurrer sustained.

Demurrer by a creditor to an involuntary petition which alleged that two of the three petitioning creditors had security in the form of maritime liens upon vessels, which were valueless as security. The acts of bankruptcy were as follows:

"I. * * * That said alleged bankrupt paid certain claims, demands, accounts, and indebtedness to Foreign Trade Banking Corporation, and several persons, firms, and corporations, creditors of said alleged bankrupt, upon antecedent indebtedness, with the intent and for the purpose of preferring such creditors over the other creditors of said alleged bankrupt, and for the purpose of allowing said creditors to obtain a greater percentage of their respective debts then any other of such creditors of the same class, which payments amounted in the aggregate to the sum of $500,000.

"II. * * * That said alleged bankrupt, with intent to hinder, delay, and defraud its creditors, and with intent and for the purpose of giving a preference contrary to the provisions of the Bankruptcy Law, and upon pretended and alleged antecedent indebtedness claimed and alleged to be due from said bankrupt to Foreign Trade Banking Corporation, and to divers persons, firms, and corporations, assigned, transferred, and set over unto said divers persons, firms, and corporations large and valuable property, consisting of merchandise, accounts, and dues receivable, of the value of about $500,000, applicable to the payment of debts of said alleged bankrupt."

John S. Sheppard, Jr., John M. Woolsey, and D. M. Tibbetts, all of New York City, for demurrer.

Charles L. Apfel, of New York City, opposed.

⊚═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

LEARNED HAND, District Judge (after stating the facts as above). The demurrer presents two questions: First, of the allegations touching the security held by two of the petitioning creditors; second, of the sufficiency of the acts of bankruptcy. The allegation that the admiralty liens are of no value is enough. The liens may theoretically exist, but section 59b of the Bankruptcy Act (Comp. St. § 9643) means that it is the actual value of the security which counts, and if the vessels have left the jurisdiction and will not return the security may in fact be of no value, because it will be impracticable to realize on the liens.

[2] The second objection is more serious. In re Rosenblatt, 193 Fed. 638, 113 C. C. A. 506, turned upon a petition which simply copied the language of the statute without specification of any sort whatever. This petition states that the alleged bankrupt, with intent to prefer, paid $500,000 upon "indebtedness" to the Foreign Trade Banking Corporation, a creditor, and upon other indebtedness to other creditors. Probably the allegation that part of the sum was paid to "other creditors" is invalid under the cases, and, if so, it must be accepted that the amount of the payment to the Foreign Trade Banking Corporation is left uncertain. The allegation amounts to this: That the alleged bankrupt, at some time after August 10, 1919, with intent to prefer, paid some part of the sum of $500,000 to the Foreign Trade Banking Corporation upon its existing indebtedness.

As matter of first impression I own that I should have thought this enough. The omissions are only of the exact dates and the exact amounts of the payments made and that I should think could be supplied by a bill of particulars and full justice be done. The allegations as to "other creditors" might be treated as surplusage. However, I cannot distinguish the case at bar from In re Mason-Seaman Transportation Co. (D. C.) 235 Fed. 974, decided by Judge Manton while District Judge, where the allegations were certainly as specific as those here, or from In re Blumberg (D. C.) 133 Fed. 845, which was an almost exactly similar case. In re Hallin (D. C.) 199 Fed. 807, may be distinguished, as well as In re Pure Milk Co. (D. C.) 154 Fed. 682, and In re Nelson (D. C.) 98 Fed. 76. These are like In re Rosenblatt, supra, and do not in my judgment control. It seems to me a harsh rule that requires petitioning creditors, who in the nature of things cannot usually be well informed of the alleged bankrupt's dealings, to specify with exactness the amounts and the times of any preferential payments they allege, and it is especially harsh if it results in preventing any amendment, as was held in Re Pure Milk Co., supra. Through a trifling omission in pleading, which perhaps the pleader had no information to supply, a creditor like the demurrant may be enabled to prevent any inquiry into the good faith of the payment to him.

However, in the face of In re Pure Milk Co., supra, it is at least an open question whether, if an amendment is necessary which shall specify more particularly the acts of bankruptcy, it would not be regarded as setting up new acts of bankruptcy, and if it were so regarded, then it is settled that the period of four months dates from the

amendment. If this be the rule in cases of inadequate specification, then if I overrule this demurrer, and my decision is wrong, it will be too late for the petitioning creditors to allege preferences occurring between, say, November 20th and December 11th, when the petition was filed. There may be such, and if I sustain the demurrer the petitioning creditors may still avail themselves of those preferences.

Moreover, if I am wrong in sustaining the demurrer, no harm has been done, because, if there are preferences between November 20th and December 11th, they can now be pleaded. If, on the other hand, there are no such preferences, the petitioning creditors may refuse to amend, and may test this order on appeal; or, if they wish, they may amend and show only preferences more than four months before the amendment. Thereupon the question may be raised on demurrer of the validity of the new petition, and on that appeal may be raised the correctness of my order sustaining this demurrer, because the amendment cannot be heard without the original petition.

Under such circumstances I think I ought to follow In re Mason-Seaman Transportation Co., supra, and In re Blumberg, supra, especially as it is not our general custom, except in clear cases, to disregard an earlier decision in the Southern district.

Nothing need be said of the second act of bankruptcy.

Demurrer sustained. I will give the petitioning creditors leave to plead over within 10 days, without any separate motion to that end. If their amendment show only acts of bankruptcy before the four-months period, the validity of the petition had better be determined by a new demurrer than by motion for leave to amend.